UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JULIE MARIE WHITING,

           Plaintiff,

     v.                                        17-CV-88
                                               DECISION AND ORDER
NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

           Defendant.

_____


On January 30, 2017, the plaintiff, Julie Marie Whiting, brought this action under

the Social Security Act ("the Act").  She seeks review of the determination by the

Commissioner of Social Security ("Commissioner") that she was not disabled.  Docket

Item 1.  On August 18, 2017, Whiting moved for judgment on the pleadings, Docket

Item 16, and on October 17, 2017, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 17.

For the reasons stated below, this Court grants Whiting's motion in part and

denies the Commissioner's cross-motion.


## BACKGROUND

I.    **PROCEDURAL HISTORY**

On January 14, 2013, Whiting applied for Disability Insurance Benefits, Tr. 222,[1]

and on January 22, 2013, she applied for Supplemental Security Income benefits

---

[1] "Tr." citations are to pages in the administrative record filed with the
Commissioner's answer, Docket Item 8.

("SSI"), Tr. 224. She claimed that she had been disabled since December 31, 2009, due to unsocialized conduct disorder, bipolar disorder, depression, anxiety, inability to be around people, panic attack disorder, and mood swings. Tr. 222, 224, 253.

On March 19, 2013, Whiting received notice that her application had been denied because she was not disabled under the Act. Tr. 106, 110-11. She requested a hearing before an administrative law judge ("ALJ"), Tr. 137, which was held on February 9, 2015, Tr. 44. The ALJ then issued a decision on August 6, 2015, confirming the finding that Whiting was not disabled. Tr. 30. Whiting appealed the ALJ's decision, but her appeal was denied, and the decision then became final. Tr. 2-4.

## II. RELEVANT MEDICAL EVIDENCE

Whiting was examined by several different providers, and the record includes substantial medical evidence from a number of different sources. Those sources include, among others, Dr. Ronald D. Klizek, a radiologist, Tr. 319; Dr. Randall L. Swanson, an orthopedic surgeon, Tr. 342; Dr. Brian Meagher, a radiologist, Tr. 333; Dr. Bruce Rockwell, a radiologist, Tr. 333-34; Dr. Brooke Kelly, a doctor of osteopathic medicine, Tr. 323; Dr. Albert Persia, a family medicine doctor, Tr. 366-68; Dr. William D. Fritz, an orthopedic surgeon, Tr. 664; Dr. Khushboo Movva, a primary care physician, Tr. 914-16; and Douglas Scotchmer, a licensed mental health counselor, Tr. 695.

## III. THE ALJ'S DECISION

In denying Whiting's application, the ALJ evaluated Whiting's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment.

§ 404.1520(a)(4)(i).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to step two.  § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments.  § 404.1520(a)(4)(ii).  If there are no severe impairments, the claimant is not disabled.  *Id.*  If there are any severe impairments, the ALJ proceeds to step three.  § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations.  § 404.1520(a)(4)(iii).  If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled.  *Id.*  But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four.  § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC").  *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e).  The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy.  *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four.  20 C.F.R. § 404.1520(e).  If a claimant can perform past relevant work, he or she is not disabled and the analysis ends.  § 404.1520(f).  But if the claimant cannot, the ALJ proceeds to step five.  20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987);

20 C.F.R. § 404.1520(a)(v), (g).  More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

"When there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).  "[A]n individual shall not be considered disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 1382c(a)(3)(J)).  "The critical question is 'whether the [Social Security Administration ("SSA")] would still find the claimant disabled if she stopped using drugs or alcohol.'"  *Cage*, 692 F.3d at 123 (quoting 20 C.F.R. § 416.935(b)(2)(i)).

In this case, the ALJ determined at step one that Whiting had not engaged in substantial gainful activity since December 31, 2009, the alleged onset date.  Tr. 20.  At step two, the ALJ found that Whiting had the following severe impairments: "polysubstance abuse disorder, including heroin, methamphetamine, cocaine, and prescription opiates; substance-induced psychosis; status-post right shoulder repair; and an anxiety disorder."  Tr. 20.  At step three, the ALJ determined that Whiting's impairments, including the substance use disorders, met listings 12.06 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

The ALJ also determined that if Whiting stopped abusing substances, her remaining limitations still would constitute a severe impairment but would not meet or

medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24.

The ALJ determined that if Whiting stopped abusing substances, she could perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[2] with no overhead reaching, occasional public contact, frequent coworker and supervisor contact, and work at or below a specific vocational preparation level of 2.[3] The ALJ also determined that Whiting's mental impairments all derive from her substance abuse issues, citing "nearly normal findings on mental status examination when the claimant does not abuse drugs." Tr. 27. As for Whiting's right shoulder injury, the ALJ determined that after she underwent surgery, her medical examination indicated that she had full range of motion and normal strength in her shoulder. Tr. 28 (citing Tr. 661).

At step five, the ALJ determined that if Whiting stopped using substances, there would be a significant number of jobs in the national economy that she could perform. Tr. 29. Specifically, the ALJ determined that should could be an office helper, a mail clerk, or an "[a]ssembler-production." Tr. 30.

Whiting objects to the ALJ's formulation of her RFC. Docket Item 16-1 at 14-20. Specifically, she argues that the ALJ relied on only his lay opinion to determine her RFC

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b); 416.967(b).

[3] According to the Commissioner's *Dictionary of Occupational Titles*, a specific vocational preparation level of 2 corresponds to "unskilled work." Social Security Ruling 00-4p, 65 Fed. Reg. 75,759, 75,760 (Dec. 4, 2000).

and that his failure to rely on any medical opinion means that the RFC determination is not based on substantial evidence. *Id.*

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

The ALJ erred in failing to address the medical evidence and opinions when evaluating Whiting's physical impairments for the period between her alleged onset date in 2009 and after her shoulder surgeries were completed in February 2013. "Although the ALJ was not required to mention every piece of evidence, providing 'an accurate and logical bridge' [between the evidence and his conclusions] required him to confront the evidence in [Whiting's] favor and explain why it was rejected before concluding that her impairments did not impose more than a minimal limitation on her ability to perform

basic work tasks." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)). *See* 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); Social Security Ruling 06-03P, 2006 WL 2329939, at *6 ("the adjudicator generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case").[4]

Here, the ALJ dedicated only two short paragraphs to his discussion of Whiting's physical impairments and his conclusion that Whiting would have the RFC to perform light work notwithstanding her right shoulder injury. Citing Dr. Kelly's evaluation, the ALJ noted that Whiting injured her right shoulder when she fell in September 2008. Tr. 28 (citing Tr. 323). He noted that Whiting underwent several surgeries, including repairs of a right rotator cuff tear on November 17, 2008, and June 26, 2009, as well as additional right shoulder surgeries on July 26, 2012, and January 28, 2013. *Id.* He then noted the record evidence supporting the conclusion that Whiting had a full range of motion in her shoulder shortly after the final surgery. *Id.* And he observed that the record did not include any evidence of right shoulder pain after February 2013. *Id.*

Even if substantial evidence supports the ALJ's conclusion that Whiting had the RFC to perform light work after her most recent surgery, the same is not true about his

---

[4] "Social Security Rulings . . . are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

conclusion that she could do such work during the entire time of her claimed disability. Indeed, the ALJ did not rely on anything in the record to support his conclusion that Whiting was not disabled from her alleged onset date in 2009 until the completion of her surgeries in 2013. *See* 42 U.S.C. § 423(d) (defining disability as the "inability to engage in substantial gainful activity . . . which has lasted . . . for a continuous period of not less than 12 months"); *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 433-34 (S.D.N.Y. 2010) (remanding to SSA because ALJ "failed to explain why . . . evidence did not adequately support the conclusion that plaintiff was not capable of work within the year after [an] accident" and noting that "if the claimant cannot work for at least a year, she would be found disabled for the period that she was unable to work"). In fact, the record includes substantial opinion evidence from Whiting's medical sources indicating that she had debilitating shoulder pain during this period.

For example, Dr. Kelly's evaluation on January 27, 2010—cited by the ALJ only for the fact that Whiting injured her shoulder after suffering a fall in 2008—noted that Whiting "ha[d] an audible pop to the shoulder when she tries to abduct greater than 90º." Tr. 323. Dr. Kelly found that Whiting's [i]nternal and external rotation is reduced by 50%." *Id.* Dr. Kelly also noted that Whiting's loss of range of motion in her shoulder by about fifty percent was accompanied by "chronic pain." Tr. 324. Likewise, Dr. Robert Berke, a family medicine doctor, indicated that Whiting's right shoulder "[r]ange of motion is notable for limitation on abduction to 70 degrees by pain." Tr. 352.

But the ALJ did not even mention these medical opinions suggesting that Whiting's physical injury would have substantially impaired her ability to work regardless of her substance abuse issues from 2009 to 2013. Instead, the ALJ noted only that

"[a]s for opinion evidence, the record contains no medical source statements or functional capacity assessments from any of the claimant's current or former treating sources."[5]  Tr. 28.  But, even if true, that does not relieve the ALJ of the obligation to review and analyze all the relevant medical evidence.

SSA regulations required the ALJ to evaluate medical opinions in the record from all sources, not just from treating sources.   20 C.F.R. § 416.927(c)  He did not do that. The case therefore is remanded for a full evaluation of the medical opinions addressing Whiting's physical impairments during the 2009-to-2013 time period.  Without written consideration of such evidence, this Court cannot be "satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

---

[5] SSA regulations distinguish between the weight given to medical opinions from treating sources and from non-treating sources.  *See* 20 C.F.R. § 416.927.  A "[t]reating source means [a claimant's] own acceptable medical source who provides [a claimant], or has provided [a claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [a claimant]."  *Id.* § 416.928(a)(2).

**<u>CONCLUSION</u>**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 17, is DENIED, and Whiting's motion for judgment on the pleadings, Docket Item 16, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:      March 6, 2019
            Buffalo, New York


                                          *s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE